STATE v. ELLIOT LESTER ADAMS.

140 N. W. (2d) 847.

February 18, 1966—No. 39,720.

*Elliot Lester Adams,* pro se, for appellant.

*Keith M. Stidd,* City Attorney, and *Sherman Bergstein,* Assistant City Attorney, for respondent.

OTIS, JUSTICE.

This is an appeal from a conviction in the municipal court of Hennepin County for making a left turn during a prohibited hour in violation of a Minneapolis ordinance. The only issue is whether the failure of the city to erect a regulatory sign which conforms to the state Manual on Uniform Traffic Control Devices invalidates the conviction.

The facts are not in dispute. On August 13, 1964, at 5:15 p. m., defendant approached the West River Road from the east on Lake Street, which is a trunk highway, and turned left at the intersection. The only sign governing his movement, except the traffic-control signal, was one erected 16 feet above the roadway, 24 feet in length and 3 feet in height, with white letters on a green background prohibiting a left turn between the hours of 4 and 6 p. m. The letters were 12 inches in height and the figures 8 inches.

It was defendant's testimony that he failed to see the sign since he was accustomed to looking for and relying on devices prescribed by the manual.[1]

Under Minn. St. 169.06, subds. 1 and 2, the commissioner of highways of the State of Minnesota is directed to adopt a manual and is authorized to place and maintain on trunk highways traffic-control devices conforming to it. Under subd. 3 local authorities may erect similar

---

[1] In this connection it should be noted that the manual authorizes only guide signs to be in green as distinguished from regulatory signs which must be black and white. Manual on Uniform Traffic Control Devices, § 1A-11.

devices on roads under their jurisdiction. Minneapolis Code of Ordinances, § 401.330, defines traffic-control devices as signs erected for the purpose of regulating traffic, and under § 407.190 drivers are prohibited from disobeying them.

It was the opinion of the trial court that the sign was one which local authorities were authorized to erect notwithstanding the fact it neither conformed to the manual nor was installed with the commissioner's permission. The court felt that the city and state had concurrent jurisdiction and the commissioner's consent could not be arbitrarily withheld. In view of the size and position of the sign, the trial court concluded that it met the minimum requirements of the manual.

■ It is the city's contention that the matter of the commissioner's permission is the concern only of the city and the state, and its absence cannot be invoked as a defense by a driver charged with the violation of an ordinance, citing Garrison v. City of Alpena, 234 Ark. 170, 350 S. W. (2d) 690. Because we believe the statute clearly adopts by reference the provisions of the manual governing the size, color, shape, and location of traffic-control devices, we hold that the commissioner is authorized to consent only to the construction of a device which substantially conforms to the manual.[2] Hence, it is not necessary to decide here whether or not the defendant may avail himself of the commissioner's failure to grant consent.

■ The sign in question was a regulatory one (as distinguished from a guide sign), the disregard of which may be punished. Manual on Uniform Traffic Control Devices, § 1A-7. The manual emphasizes the necessity for standardized colors and shapes to permit drivers approaching at high speed to read the signs in the few seconds they are visible. To that end, "[s]implicity and uniformity in design, position, and application are of the greatest importance." § 1A-8. Uniformity in design includes shape, color, and dimensions. § 1A-9.

Specifically, the manual requires that regulatory signs (other than stop and yield signs) be rectangular, ordinarily with the longer dimension vertical. The background and legend shall contrast in black and white.

---

[2] The variance is not substantial when, for example, a sign is not illuminated as the manual requires but the offense occurs in the daytime. Commonwealth v. Bieber, 44 Pa. D. & C. 193.

§§ 1A-10 and 1A-11. The dimensions of no-left-turn signs shall be at least 24 inches by 30 inches and such signs must be located at the far right-hand corner and at the far left-hand corner of intersections such as this, facing the approaching traffic. § 1B-16. The precise issue which is here presented is the construction of the following additional provision of § 1B-16:

"These are minimum requirements [the size and location above described], and *additional* signs should be placed as necessary at or in advance of the intersection. Overhead signs are sometimes desirable, particularly in congested areas." (Italics supplied.)

It is the contention of the city that the sign which is erected not only met the minimum requirements but far exceeded them. However, as we construe the manual, the word "additional" clearly indicates an intention to authorize signs such as the one here under consideration only when those specified by the manual are already in place. We do not read the word "additional" to mean "alternative."

We therefore hold that the sign in question did not substantially comply with the manual and is therefore not an official traffic-control device within the meaning of Minneapolis Code of Ordinances, § 407.190. Hence, defendant may not be convicted for failing to obey it. Commonwealth v. Spang, 33 Pa. D. & C. 641; State v. Callaghan, 46 N. J. Super. 289, 134 A. (2d) 609.

Reversed.